Nathan L. HUEY, Plaintiff–Appellant,

v.

**UNITED PARCEL SERVICE, INC., Defendant–Appellee.**

No. 98–2453.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 1998.

Decided Jan. 8, 1999.

Lelia M. Harmon, Christian Legal Services, Milwaukee, WI, Harvey L. McCormick (argued), Kansas City, MO, for Plaintiff–Appellant.

Mary P. Ninneman (argued), Quarles & Brady, Milwaukee, WI, for Defendant–Appellee.

Before ESCHBACH, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Formerly employed by United Parcel Service, Nathan Huey contends that his discharge came in retaliation for making a claim of racially hostile working conditions, plus discrimination in training and promotions. UPS sought and received summary judgment on all theories other than retaliation. If the district judge was entitled to act on the basis of UPS's submission of undisputed facts, summary judgment was proper. Huey contends, however, that Local Rule 6.05, which authorizes the court to act as it did, conflicts with Fed.R.Civ.P. 56.

UPS supported its motion with a detailed statement of facts and pinpoint references to the record, as Local Rule 6.05 requires. Huey did not file a timely response. Concerned that counsel did not understand his obligations, the district judge *sua sponte* extended Huey's time to reply and specifically called counsel's attention to Local Rule 6.05. When nothing arrived by the extended date, the court contacted Huey's lawyer, who at last filed an affidavit (in the form of a brief)—but the court concluded that this did not conform to the local rule because it did not take issue with UPS's submission point-by-point and in many respects did not address UPS's submissions at all. Once again the court reminded Huey's lawyer of Local Rule 6.05 and invited him to file a proper response. Counsel's next effort was no better than the last, and the court gave up and analyzed the facts as UPS had framed them.

■ Along the way the judge made a remark that presages Huey's current argument (emphasis in original): "Huey's counsel apparently misunderstands the local rule, contending that parties may not involuntarily be forced to stipulate to facts. Neither the local rule nor order of this court requires that Huey *must* stipulate to facts; the parties *may*, but are not *required to,* submit stipulated facts. However, if Huey disputes UPS's proposed facts, he *must* refer specifically to the disputed facts and submit evidentiary materials which provide a basis for his dispute." Huey repeats in this court the argument that the district judge addressed: that Local Rule 6.05 conflicts with Rule 56 by requiring parties to "stipulate" to facts. But

stipulation is just one of three options in Local Rule 6.05(a); a detailed response is another. This court has entertained and rejected an argument that the Eastern District of Wisconsin's rule conflicts with the national rule. *Doe v. Cunningham*, 30 F.3d 879, 882–83 (7th Cir.1994). We see no reason to revisit that question—particularly not in light of the plenitude of decisions holding that the other district courts of the circuit are entitled to enforce their comparable rules. *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927–28 (7th Cir.1998), is but the most recent in a long series. District courts may elaborate on the requirements of the national rules, adding operational details, without being "inconsistent" with the national rules and thus running afoul of Fed.R.Civ.P. 83.

The national rules themselves entitle parties to insist that their adversaries stipulate (technically, "admit") to facts that they cannot reasonably dispute. Fed.R.Civ.P. 36; cf. Fed.R.Civ.P. 16(c). Rule 36(a) provides that failure to respond within 30 days to a request for admission has the same effect as an admission. So if Local Rule 6.05(d) equates silence with admission, it has the company of Rule 36(a). But, as the district court noted, this is not what the local rule does. It requires parties to *point to* the facts on which they rely to support or contest a factual issue. Failure to do this does not stipulate *to* or *admit* the *opponent's submissions*—though it has much the same effect unless the judge is willing to take an unguided excursion through the record. As we have held many times, however, judges need not paw over the files without assistance from the parties. Making it clear to litigants that the judges of the Eastern District of Wisconsin won't go on tour without their Baedecker is all the rule accomplishes, and such a modest demand—which contributes to the efficient management of judicial business—is entirely compatible with Rule 56. The district judge tried to be accommodating but in the end was entitled to enforce the local rule.

■ After a trial on the retaliation claim, the jury returned a verdict for UPS. Huey portrayed himself as a good employee who received high ratings until he complained about racial discrimination, and then was

sacked. UPS replied that the discharge occurred because a verbal altercation occurred between Huey and his supervisor, and Huey attempted to have the police arrest the supervisor by falsely alleging that the supervisor assaulted him. The jury obviously accepted UPS's explanation of the discharge. The only claim of trial error requiring discussion is Huey's contention that the court should have permitted Q.R. Verdier, a "forensic vocational expert" with a Ph. D. in human resource development, to testify that UPS retaliated against Huey for his claim of discrimination. On January 13, 1998, Verdier sent this letter to Huey's lawyer, who turned it over in discovery as the report of an expert witness:

> Per your letter of December 19, 1997, requesting my expert opinion in the subject case with respect to the question of retaliatory discharge of Mr. Huey by UPS as a result of his filing of a discrimination complaint, I have thoroughly reviewed all the documents which you forwarded and researched all sources available to me in this holiday period.
>
> As you know, at your suggestion I have previously met with Mr. Huey on April 19, 1997 in Madison to be brought up to date by him on developments subsequent to his discharge by UPS, apparently for his filing a request for police intervention after the May incident involving his supervisor, Mr. Sims, in Watertown, WI.
>
> Mr. Sims in his deposition dated February 6, 1997 stated that he did not have authority to discharge Mr. Huey, although he instructed him in person and on the phone the next day to leave the work place and not to return until he was contacted by UPS. Mr. Radovic in his deposition of the same day also confirmed that Mr. Huey's dismissal was due to a higher level management decision made after an investigation which was finalized without Mr. Huey been [sic] given a fair hearing, warning or other opportunity to defend himself.
>
> Mr. Huey's discharge was based on his "failure to perform his work", which he was prevented from doing by Mr. Sims' orders, although his previous work record was satisfactory and he had recently been commended for performance of a new assignment without benefit of training.
>
> My conclusions from the facts presented, based on my professional experience and training and exposure to current laws and regulations as an employment agent for over thirty years, is [sic] that Mr. Huey was the victim of a retaliatory discharge by UPS for racially motivated reasons in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. # 1981, as amended, 1991, because Mr. Huey asserted his protected right as a minority to be free from employment harassment and also his right to be free from bodily harm at his place of employment.

Experts in discrimination cases often do statistical analysis to determine whether race (or some other protected characteristic) is an explanatory variable, but Verdier did no such thing. Nor did he study UPS's personnel files to determine whether the handling of Huey's situation departed from the firm's norm in a way that might imply retaliation. He did not attempt to reconstruct the underlying facts to determine whether UPS had a good explanation. He did not explain what field of knowledge a professional in human resource development masters or how this knowledge was employed to analyze Huey's situation. As far as this letter reveals, Verdier did not do *anything* except talk to Huey, read documents Huey's counsel sent, and write a letter. Verdier does not describe the reasoning used to reach his conclusion. During an offer of proof, Verdier was clear about the limits of his inquiry and the basis of his opinion. Asked if he did more than accept Huey's view that UPS retaliated, Verdier replied: "I think he's the one that [sic] best knows what happened in the situation."

■ This will not do as the work of an expert. Decision does not depend, as Huey supposes, on using the framework of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to evaluate testimony that is not "scientific." We have held that *Daubert* applies to all expert testimony, *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir.1996), and the Court will decide in *Kum-*

*ho Tire Co. v. Carmichael*, cert. granted, —— U.S. ——, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998) (argued Dec. 7, 1998), whether this is right, but the answer does not matter to Huey's case. The controlling law is Fed. R.Evid. 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The district judge thought that Verdier had not exhibited "scientific, technical, or other specialized knowledge". He gave a conclusion, but no more. *Daubert* says that courts must ensure that purportedly scientific testimony employs scientific methods to reach reliable conclusions, and by extension Rule 702 requires any other application of specialized knowledge to be professionally sound and reliable. *Frymire–Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 186–87 (7th Cir.1993). But the reliability issue does not arise until the expert proposes to give an opinion that depends on "scientific, technical, or other specialized knowledge", which Verdier did not.

"An 'opinion has a significance proportioned to the sources that sustain it.' *Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank*, 253 N.Y. 23, 34, 170 N.E. 479, 483 (1930) (Cardozo, J.). An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir.1989). See also, e.g., *McMahon v. Bunn–O–Matic Corp.*, 150 F.3d 651, 657–58 (7th Cir.1998); *Minasian v. Standard Chartered Bank*, PLC, 109 F.3d 1212, 1216 (7th Cir.1997); *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316 (7th Cir.1996). The district court cited *Minasian* for the proposition that an expert must "substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless." Huey has not attempted to overcome this obstacle; his brief does not discuss *Minasian* or similar cases; instead it assumes that anyone with "expertise" may testify as an expert. That just is not so. Expertise is a necessary but not a sufficient condition of admissibility under Rule 702. Verdier may have specialized knowledge or skills, but he did not apply them to the analysis of Huey's claim. Our review is deferential, see *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and the district court's decision, far from being an abuse of discretion, is clearly correct.

AFFIRMED.