Peter GEORGOU, Mary Ann Georgou, and Contessa Main Street Corporation, Plaintiffs–Appellants,

v.

Robert S. FRITZSHALL, Steven N. Fritzshall, and Rick A. Gleason, Defendants–Appellees.

No. 98–3755.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1999.

Decided April 22, 1999.

Jeffrey S. Harris, John S. Bishof, Jr., for Robert S. Fritzshall.

Robert S. Fritzshall, pro se.

Diana Triplett Epstein, Andrew W. Levenfeld (argued), Levenfeld & Associates, Chicago, IL, for Steven Fritzshall and Rick A. Gleason.

Steven R. Hansen, Chicago, IL, for Peter Georgou.

J. Douglas Weingarten (argued), Donald L. Johnson, Chicago, IL, for Mary A. Georgou and Contessa Main Street Corporation.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Four friends operated Contessa, a restaurant in Skokie, Illinois. George and Thomas Kalabogias cooked; Peter Georgou and his wife Mary Ann Georgou ran the business side. Peter and Mary Ann jointly owned 51% of the stock, the Kalabogias brothers 49%. Things began to unravel when Peter Georgou fired George Kalabogias in 1985. Thomas Kalabogias quit early in 1986. One of the Kalabogias brothers appropriated a ledger that Peter had maintained for 1983. An analysis of this ledger led Thomas's lawyer to conclude that Peter had been keeping two sets of books, and had been skimming between 17% and 23% of the restaurant's gross receipts. Peter did his best to confirm this suspicion by destroying all corporate financial records from 1980 through 1985 as soon as he learned that someone else had the 1983 ledger. In state court the Kalabogiases secured a judgment for $683,060. Contessa was ordered to buy their stock for this sum. When it did not pay, the court declared the Georgous jointly and severally liable for the damages. All three responded by filing bankruptcy petitions in federal court and initiating this malpractice litigation against Robert Fritzshall, who represented them in state court, and his former partners. See *In re Georgou*, 157 B.R. 847 (N.D.Ill.1993) (concluding that the former partners are potentially liable for Robert Fritzshall's errors). A grant of summary judgment for defendants, 1998 U.S. Dist. Lexis 11252, 1998 WL 417924 (N.D.Ill.1998), led to this appeal.

All of the pleadings in the malpractice case, and all of the briefs filed in the appeal, identify Contessa and the Georgous as the plaintiffs. If they really *are* the plaintiffs, then the suit has no business being in federal court: all parties are citizens of Illinois, and the claim arises under state law. But documents filed in response to this court's request for supplemental memoranda show that the bankruptcy estates are (or were) the actual plaintiffs. Federal jurisdiction therefore rests on 28 U.S.C. § 157(c)(1), because the case is related to the bankruptcies in the sense that creditors will be the beneficiaries. See *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746 (7th Cir.1989); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987). Peter Georgou's bankruptcy was wrapped up in 1994 and he has apparently abandoned this case.

The notice of appeal identified Peter as an appellant, but neither he nor anyone representing him (or his former estate in bankruptcy) has filed anything on his behalf. Peter Georgou's appeal therefore is dismissed for want of prosecution, see Circuit Rule 3(c)(2), and the appeal will proceed on behalf of Contessa and Mary Ann Georgou only. We grant the parties' motion to amend the pleadings under 28 U.S.C. § 1653 to identify the bankruptcy estates as the plaintiffs and turn toward the merits.

Toward, but not directly to, the merits. The suit for malpractice stems from the judgment awarded to the Kalabogiases, which makes them the estates' largest creditors. The malpractice action by the bankruptcy estates therefore is largely for the Kalabogiases' benefit. They want to recover *on the theory that the judgment in their favor is too big*! Why should the Kalabogiases be entitled to collect their judgment, in their role as creditors, by persuading the court that but for Fritzshall's errors the judgment would have been smaller (or zero)? Yet defendants do not notice this conundrum. They treat this litigation, as we have said, as a suit by the Georgous and Contessa—which it isn't (and for jurisdictional reasons couldn't be). Many states disallow circular recoveries. A corporation that collects insurance proceeds on account of a director's misconduct may find the payment reduced to the extent the director (as shareholder) would benefit. Cf. *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956 (7th Cir.1999). But the Kalabogiases are not wrongdoers; the problem with recovery in this suit is not that it would condone or reward misconduct, but that it would depend on a contradiction: the Kalabogiases reap the benefit of the state-court judgment if and only if they can show that the judgment is too large (and therefore that malpractice occurred). Perhaps it is enough that some other creditors would share in this bonanza. At all events, irony is not a jurisdictional defect, so we press on.

The principal issue contested in the state court litigation was whether Peter Georgou's removal of cash from the till was designed to defraud the Kalabogiases or only to defraud tax collectors. (Neither Contessa nor the Georgous paid state or federal tax on the skimmed cash.) The Kalabogiases contended that Peter used the money for the Georgou family's exclusive benefit; defendants replied that some of the cash was doled out to the Kalabogiases and the restaurant's employees and suppliers. Collateral disputes concerned membership on Contessa's board and the remedy (both the quantum of damages and the appropriate form of relief). The Kalabogiases contended, for example, that Robert Fritzshall's secretary had altered the books to show that Ethel Nagode (Mary Ann Georgou's mother) was a member of Contessa's board, a step that gave the Georgous voting control. As for the remedy: the Kalabogiases originally asked for dissolution of Contessa, but Fritzshall argued that instead the firm should buy out the minority interest. The court ultimately chose that remedy but valued the stock at much more than the Georgous argued that it was worth, and made the Georgous jointly liable with Contessa for the payment. See *Kalabogias v. Georgou*, 254 Ill.App.3d 740, 193 Ill.Dec. 892, 627 N.E.2d 51 (1st Dist.1993).

In the malpractice action, Contessa and the Georgous challenged almost every aspect of Fritzshall's performance, but on appeal the objections have come down to two: first, that Fritzshall should have stood aside and secured alternative counsel in the state case once it became clear that alteration of the corporate records was at issue, a step that would have made Fritzshall available as a witness on the subject; second, that Fritzshall did not use 805 ILCS 5/12.55(f) to avert a judgment against the Georgous personally. (Section 12.55 was rewritten in 1995; we refer to the version of the statute in force between

1983 and 1995, spanning the time of the transactions and the trial in state court.)

█ Neither of these aspects of Fritzshall's performance had anything to do with the judgment against Contessa, so it effectively drops out, leaving Mary Ann Georgou as the sole remaining plaintiff. Her claim faltered in the district court not so much because the district judge thought Fritzshall a good lawyer as because he thought Georgou's current lawyer a bad one. Illinois requires the plaintiff in a legal-malpractice case to establish through expert testimony the standard of care to which the accused lawyer should have adhered. *Barth v. Reagan*, 139 Ill.2d 399, 151 Ill.Dec. 534, 564 N.E.2d 1196, 1199–1200 (1990). Georgou's lawyer did not do this. Daniel C. Meenan, Jr., their proposed expert witness, did not prepare a written report, and at a deposition did not attempt to identify a standard of care; instead Meenan just related that he would have defended the Kalabogias suit differently from the way Fritzshall handled it. Hindsight is wonderful but in Illinois is not enough to collect damages from the former lawyer.

Actually, the district judge barely got this far into the analysis: he concluded that noncompliance with Local Rule 12(N)(3) disentitled Georgou to a decision on the merits. That rule requires a party responding to a motion for summary judgment to file a paragraph-by-paragraph response "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon". Fritzshall and his former partners moved for summary judgment and provided a detailed statement of facts, relying particularly on the deposition testimony of their legal expert, George Collins. The response was unhelpful, to put it mildly. Here is one element of the exchange.

43. Collins determined that Robert Fritzshall's representation of the Georgous after and in light of Pappas' allegations that Fritzshall altered the minute books was within the standard of care because the issue in the case was plainly not the minutes.

Plaintiffs' Response: Plaintiff [sic] admit this is the deposition testimony of Mr. Collins.

Page after page of the response takes this form: defendants' assertion, followed by plaintiffs' "admission" that defendants have made that assertion—but with no response of their own, let alone a citation to the place in the record where the district judge can find the material dispute that will stave off summary judgment. What an absurd way to litigate! Did plaintiffs expect the judge to do all the work? The judge was not setting out to decide whether Collins had indeed asserted something; the question at hand was whether the assertion is correct. On that subject Georgou's lawyer did not try to assist the court. District judges must navigate through a press of cases; they are entitled to demand and receive the assistance of counsel, and to decide against those parties whose lawyers frustrate rather than facilitate the process. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir.1999); *Huey v. United Parcel Service, Inc.*, 165 F.3d 1084 (7th Cir.1999).

█ Plaintiffs lost in the district court, then, on two independent grounds: that they had not proffered expert evidence about the standard of care, and that they had not provided record references in response to defendants' submissions, leading the district judge to accept defendants' position as established. Instead of addressing the grounds on which they had lost in the district court, appellants proceed straight to the merits of the malpractice claim and contend that Fritzshall bungled the state litigation. A lawyer who ignores the grounds on which his client lost in the district court has foreclosed all appellate prospects. *Huey*, 165 F.3d at 1085. Although Georgou's current lawyer turned to Rule 12(N) and the standard of care in his reply brief, by then it was too late; an appellant must present in the

opening brief all grounds of appeal, so that the appellee may respond to them. Arguments first presented in a reply brief have been forfeited, so this appeal was effectively dead the instant appellants filed their opening brief.

■ Lest we set up an infinite regress—with the estates in bankruptcy next suing their current lawyer, J. Douglas Weingarten, for malpractice in the prosecution of the malpractice claim against Robert Fritzshall—we add that the substantive arguments could not have prevailed. Let us suppose that Fritzshall should have brought in another lawyer so that he could testify about how Ethel Nagode came to be on Contessa's board of directors. That was collateral to the main issue: whether Peter Georgou was stealing from the brothers Kalabogias, or only from the state and federal treasuries. Fritzshall's decision to let this subject pass without his testimony could not have affected the outcome, and it saved the Georgous the expense of hiring another lawyer.

■ As for 805 ILCS 5/12.55(f): its proviso that other shareholders may not be required to provide "security" when a court directs a corporation to purchase the shares of complaining investors did not speak to the question whether the Georgous may be liable in their own right. The state court did not order "security" for a judgment; it held that the Georgous were wrongdoers in their own rights. No Illinois statute or decision we could find holds that corporate and personal liability are mutually exclusive. This case shows why. The state court found that Peter Georgou lined his own pocket with corporate funds. The money to reimburse the other shareholders thus was in the Georgous' bank account, not the corporation's. A court sensibly could require both the corporation and the thief to pay the injured shareholders. Suppose that Contessa's only asset was $1 million in cash, of which Peter Georgou stole $750,000. A court might have ordered Contessa to repurchase the minority interest for $490,000, its value

before the theft, but only half of the necessary funds would have been in the corporate treasury. The rest would have had to come from the thieving shareholder. Nothing in Illinois law provides that the corporation's payment of $250,000 (all it has left) to the minority would absolve the looter of responsibility for the balance, or that collection from the looter of whatever he still had of the booty would foreclose recovery from the corporation.

Appellees close their brief with a request for sanctions under Fed. R.App. P. 38 for pursuing a frivolous appeal. In keeping with the rest of his performance, Weingarten does not address this request. The appeal certainly appears to be frivolous, and here there is no problem with circular recoveries: any payment would come out of the bankruptcy estates at the expense of the Kalabogiases, or perhaps of Weingarten personally. We give Weingarten and the bankruptcy estates 14 days to show cause why they should not be penalized for pursuing a frivolous appeal; within the same time appellees should file statements of the attorneys' fees and costs reasonably incurred in connection with the appeal.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED.