BANK OF AMERICA NEVADA, APPELLANT, *v.*
JOSEPH BOURDEAU, RESPONDENT.

No. 31288

August 30, 1999                    982 P.2d 474

[Rehearing denied December 15, 1999]

*Hicks & Walt* and *Neil M. Alexander,* Reno, for Appellant.

*Kevin Mirch,* Reno, for Respondent.

*Kathryn R. Norcross,* Washington, D.C., for Amicus Curiae Federal Deposit Insurance Corporation.

Before YOUNG, SHEARING and LEAVITT, JJ.

# OPINION

*Per Curiam:*

Joseph Bourdeau was an at-will employee of Bank of America Nevada, who served as manager of the North Tahoe branch. He was asked to resign after an internal review of the branch revealed forty-seven violations of bank policies, including six that were repeat violations, and three which exposed the bank to possible civil and criminal prosecution. Bourdeau denied the violations and stated that the persons conducting the review did not like him and were out to "get him." He was threatened with termination and loss of his earned bonus. However, he was allowed to resign with payment of the bonus, if he did so immediately without talking to an attorney. Further, he was promised that the reasons for his resignation would be kept confidential.

Subsequently, Bourdeau assembled a group of investors and raised $3.5 million to start a new bank named Bank of Lake Tahoe. He was to be the chief executive officer and president of the new bank. It was necessary to apply to the Nevada Division of Financial Institutions for a state charter and to the Federal Deposit Insurance Corporation (FDIC) for approval of federally insured accounts to be deposited in the bank. The two agencies usually conduct a joint investigation of all the people who would be involved in any policy-making capacity with a new bank. The investigator for the FDIC talked to several employees of Bank of America Nevada and filed a report which recommended that Bourdeau not be approved as the chief executive officer and president of the new bank. The report contained damaging information about Bourdeau concerning his lending ability and the reasons why he left his job with Bank of America Nevada.

Bourdeau and his investors sold their potential bank to an existing bank before any ruling was made on the application. He became a branch manager for the existing bank and was paid a salary of $50,000.00 to $60,000.00 a year. He filed suit against Bank of America Nevada and several employees alleging, among other claims, slander, fraudulent misrepresentation and intentional interference with prospective business relationship. The jury found for all of the defendants on the slander and fraudulent misrepresentation claims, but found against Bank of America Nevada on the claim of intentional interference with prospective business relationship and awarded $1.2 million to Bourdeau as compensatory damages. The jury also considered punitive damages, but declined to assess any such damages against the bank. A judgment was entered in accordance with the jury verdict. Bank of America

Nevada appeals from that part of the judgment pertaining to the award of damages for the intentional interference with prospective business relationship.

Bank of America Nevada requested a jury instruction concerning an absolute or conditional privilege as to any communications made to the FDIC, claiming the agency was acting in a quasi-judicial capacity. The trial judge refused the instruction and gave only a conditional privilege instruction regarding intra-bank communications.

We must decide if statements made to an examiner during a statutorily required fact-finding investigation by the FDIC into Bourdeau's fitness to serve as an officer of a new bank are entitled to an absolute privilege as a quasi-judicial proceeding or to a conditional privilege only. We hold that any statements made to FDIC investigators are subject to a conditional privilege, unless the privilege is abused. Bourdeau must overcome the privilege by proving the comments were made with actual malice, knowledge they were false, or reckless disregard for whether the statements were false. Since the trial judge failed to instruct the jury on the law of conditional privilege regarding statements made by the bank's employees to any investigator, the jury verdict must be set aside and the case remanded for a new trial.

We have previously held that defamatory matter published in a judicial proceeding is absolutely privileged when the answers of the witness are "relevant . . . to the subject of inquiry, whether or not they are false or malicious." Nickovich v. Mollart, Et Al., 51 Nev. 306, 313, 274 P. 809, 810 (1929); *see also* Circus Circus Hotels v. Witherspoon, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983). We extended the rule of absolute privilege to quasi-judicial matters. Lewis v. Benson, 101 Nev. 300, 301, 701 P.2d 751, 752 (1985); Knox v. Dick, 99 Nev. 514, 518, 665 P.2d 267, 270 (1983).

Here, the statements were made to an investigator concerning a background check of respondent. There was no action of a judicial character taken by either the FDIC or the Nevada Division of Financial Institutions. Respondent withdrew his application because of the unfavorable report and therefore no hearing on the application was ever held, nor testimony taken under oath, nor subpoenas issued. Consequently, there was no discretionary decision made by either of the agencies, and the statements are not protected by the absolute privilege granted to quasi-judicial bodies.

However, "[a] qualified or conditional privilege exists where a

defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty.'' *Circus Circus,* 99 Nev. at 62, 657 P.2d at 105 (citations omitted). A background investigation of an employee is subject to conditional privilege, and any defamatory statements therein are not actionable unless the privilege is abused by publishing the statements with malice. Pierson v. Robert Griffin Investigations, 92 Nev. 605, 606, 555 P.2d 843, 843 (1976); *cf.* Gallues v. Harrah's Club, 87 Nev. 624, 626-27, 491 P.2d 1276, 1277 (1971).

> Whether a particular communication is conditionally privileged by being published on a ''privileged occasion'' is a question of law for the court; the burden then shifts to the plaintiff to prove to the jury's satisfaction that the defendant abused the privilege by publishing the communication with malice in fact. The question goes to the jury only if there is sufficient evidence for the jury reasonably to infer that the publication was made with malice in fact.

*Circus Circus,* 99 Nev. at 62, 657 P.2d at 105 (citations and footnote omitted).

Here, the bank had an interest and duty to cooperate with the examiner to ensure that officers of a new bank are qualified and experienced. The same interest applies to the agencies that by law are required to investigate proposed officers of a new bank.

The trial judge erred by not instructing the jury that the statements made to the bank examiner were conditionally privileged as a matter of law and cannot be used to prove an interference with a prospective business relation claim unless the privilege is abused by bad faith, malice with spite, ill will, or some other wrongful motivation, and without belief in the statement's probable truth. *See Pierson,* 92 Nev. at 606, 555 P.2d at 843; *cf. Gallues,* 87 Nev. at 626-27, 491 P.2d at 1277.

Accordingly, by reason of the foregoing, we reverse that portion of the judgment pertaining to Bourdeau's claim for intentional interference with prospective business relationship and remand the case for a new trial on the issue of conditional privilege as it relates to the intentional interference with prospective business relationship claim. We affirm the judgment in all other respects.