**Robin ORR, Plaintiff–Appellant,**

v.

**BANK OF AMERICA, NT & SA, Defendant–Appellee.**

**No. 00–16509.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 2002.

Filed March 5, 2002.

Amended April 5, 2002.

Kevin J. Mirch, Reno, NV, for plaintiff-appellant Robin Orr.

Patricia Gillette, Tracy S. Achorn, Heller Ehrman White & McAuliffe LLP, San Francisco, CA, for defendant-appellee Bank of America, NT & SA.

Before GOODWIN, SNEED and TROTT, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

SNEED, Circuit Judge.

The mandate, issued on March 27, 2002, is hereby recalled.

The opinion filed March 5, 2002, is amended. The Hearsay section of the opinion is substantially amended.

The panel directs the Clerk to reenter judgment. The parties may seek panel rehearing or rehearing en banc thereafter within the time limits provided by Federal Rule of Appellate Procedure 40.

## OPINION

Robin Orr ("Orr") appeals the district court's grant of summary judgment in favor of Bank of America ("BOA"). The district court found that most of the evidence submitted by Orr in support of her opposition to BOA's motion for summary judgment was inadmissible due to inadequate authentication and hearsay. It held Orr had failed to present any admissible evidence to raise a triable issue of material fact and thus entered summary judgment in favor of BOA on Orr's First Amended Complaint ("Complaint"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Orr was a service manager for BOA's Incline Village branch in 1992. Joe Bourdeau ("Bourdeau") was its sales manager. In July 1992, the branch suffered a nighttime deposit loss of $12,000. As part of its investigation, the FBI took a polygraph test from Orr.[1] BOA claims it did not receive the results of Orr's polygraph test. Its position is corroborated by Orr's deposition testimony and the affidavit of an FBI agent who administered the test. Orr was never charged with any criminal wrongdoing.

In January 1993, George Burns, BOA's District Officer, and Vicki Haven, BOA's auditor, conducted an operational review of BOA's Incline Village branch. They reported forty-seven deficiencies. This led Julie Castle ("Castle"), BOA's Incline Village branch manager, to terminate Bourdeau and Orr for failure to implement proper control procedures.

Bourdeau and Orr subsequently raised $3.5 million to start the Bank of Lake Tahoe ("Tahoe Bank"). An application for deposit insurance was submitted to the Federal Deposit Insurance Corporation ("FDIC"), listing Orr as Tahoe Bank's proposed Vice President of Operations and Bourdeau as its President and CEO.

The FDIC interviewed BOA's Incline Village branch managers Castle and Robert Underwood ("Underwood") as part of its investigation of Tahoe Bank. Castle and Underwood insist they did not disclose any information about Orr to the FDIC. Orr, however, claims they submitted disparaging information about her to the FDIC. She points to Exhibit B, Bourdeau's deposition testimony in which he states that he saw negative documents about Orr at the FDIC and was told they were submitted by BOA. She also points to Exhibit C, a memo sent from Bob Geerhart to Scott Walshaw, both agents of the Nevada Department of Financial Institutions, concerning the investigation of Tahoe Bank in which Geerhart paints a suspicious portrait of Orr based on an FBI report. That report purportedly identified her as a suspect in an $18,000 theft of a deposit at BOA.[2] At the close of its investigation, the FDIC denied Tahoe Bank's application.

---

1. There is no admissible evidence indicating whether Orr passed or failed her polygraph.

2. Therein, Geerhart states:
 I read the FBI report and it did reflect a "high degree of suspicion" [on the part of Orr], however, she was never charged, nor were her accounts ever investigated by the FBI, because they did not have enough evidence to proceed. It is the FDIC's position that they cannot use the FBI report because it was given in confidence, with no legal action taken against Robin Orr, however, it does present a problem of security to the new bank. Chris Collella [of the FDIC] informed me that he intends only to advise

In February 1995, Bourdeau filed an action against BOA alleging slander, fraudulent misrepresentation and intentional interference with business relations. The jury dismissed all but one count in which it found BOA liable for intentional interference with prospective business relations and awarded Bourdeau $1.2 million in compensatory damages. On appeal, the Nevada Supreme Court reversed and remanded for a new trial.[3]

Following the FDIC's denial of Tahoe Bank's application, the Nevada Banking Company purchased Tahoe Bank and opened a branch in Incline Village. It hired Bourdeau and Orr and became highly successful. Orr has been working there since January 1996 and is currently its Operations Officer.

Orr brought the present action against BOA on August 24, 1998. Her Complaint contains counts for intentional interference with existing contractual relations, intentional interference with prospective business relations, business disparagement, slander, intentional infliction of emotional distress, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Sherman Act, and the Employee Polygraph Protection Act. Orr alleges that the FDIC's rejection of Tahoe Bank's application injured her, costing her equity in Tahoe Bank and depriving her of valuable career opportunities.

BOA moved for summary judgment on Orr's Complaint. The district court found that twenty-two of the twenty-five exhibits

submitted by Orr were inadmissible as hearsay or for lack of proper authentication. As the three admissible exhibits failed to raise a triable issue of material fact, the district court granted summary judgment in favor of BOA. Orr appeals.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. See Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir.2001). We must determine, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Compare Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), with Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987).

## CHOICE OF LAW

■ This is a diversity action. The Federal Rules of Evidence govern. See Trammel v. United States, 445 U.S. 40, 47 n. 8, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); Wray v. Gregory, 61 F.3d 1414, 1417 (9th Cir.1995) (per curiam) ("the Federal Rules of Evidence ordinarily govern in diversity cases"). Nevada law, including its statute of limitations, governs Orr's tort claims because the alleged torts occurred in the state of Nevada.[4]

---

examiners to be watchful of her activities, if FDIC issue insurance, and the bank is opened with her as Operations Officer.

**3.** The Court held that statements made by BOA employees to the FDIC in its investigation of Bourdeau's fitness to serve as an officer of Tahoe Bank were subject to conditional privilege. The privilege could be overcome by showing that the statements were made

with malice, knowledge of their falsity, or reckless disregard for their truth. See Bank of Am. Nev. v. Bourdeau, 115 Nev. 263, 266, 982 P.2d 474 (1999) (per curiam).

**4.** Because this is a diversity action filed in the Northern District of California, California's choice of law rules govern. See Cleary v. News Corp., 30 F.3d 1255, 1265 (9th Cir.1994) ("A district court in diversity jurisdiction

## DISCUSSION

### I. Many of Orr's Exhibits Are Inadmissible Because of Inadequate Authentication and Hearsay.

■ In opposing BOA's motion for summary judgment, Orr submitted Exhibits A through Y, various documents attached as exhibits to the declaration of her counsel Kevin Mirch ("Mirch"). The district court admitted Exhibits A, U, and V. It excluded the remaining exhibits for inadequate authentication and hearsay. We confront the issue whether any of the excluded exhibits should have been admitted and whether such admission alters the outcome of the summary judgment motion.[5] We conclude that with the exception of Exhibits A, U, and V, Orr's exhibits are inadmissible due to inadequate authentication or hearsay. Because Exhibits A, U, and V do not present a triable issue of material fact, we affirm the district court's grant of summary judgment.

### A. Standard of Review of Evidentiary Rulings

■ The district court's exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). It

follows that we must affirm the district court unless its evidentiary ruling was manifestly erroneous *and* prejudicial. *See id.* at 142, 118 S.Ct. 512; *Maffei v. N. Ins. Co.,* 12 F.3d 892, 897 (9th Cir.1993).

### B. Authentication

■ A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988). Authentication is a "condition precedent to admissibility,"[6] and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims."[7] Fed.R.Evid. 901(a). We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment. *See Cristobal v. Siegel,* 26 F.3d 1488, 1494 (9th Cir.1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550–51 (9th Cir.1989); *Beyene,* 854 F.2d at 1182; *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.,* 539 F.2d 684, 686(9th Cir.1976).

■ In a summary judgment motion, documents authenticated through personal

---

must apply the law of the forum state to determine the choice of law."). Applying California's governmental interest test, we conclude that Nevada law, including its statute of limitations, is applicable to Orr's tort claims. *See Am. Bank of Commerce v. Corondoni,* 169 Cal.App.3d 368, 372, 215 Cal.Rptr. 331 (1985). The alleged torts occurred in Nevada; Orr is a resident of Nevada; and BOA's branch is located in Nevada. Under the circumstances of this case, we believe that California has little interest in having its law applied here.

5. Orr did not object to and has thus waived any challenge to the district court's evidentiary rulings with respect to the evidence submitted by BOA. *See In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 379 n. 6 (9th Cir.1995); *Townsend v. Columbia Operations,* 667 F.2d 844, 849 (9th Cir.1982).

6. Once the trial judge determines that there is *prima facie* evidence of genuineness, the evidence is admitted, and the trier of fact makes its own determination of the evidence's authenticity and weight. *See Alexander Dawson, Inc. v. NLRB,* 586 F.2d 1300, 1302 (9th Cir. 1978) (per curiam).

7. Authentication is a special aspect of relevancy concerned with establishing the genuineness of evidence. *See* Fed.R.Evid. 901(a) advisory committee's note.

knowledge[8] must be "attached to an affidavit that meets the requirements of [Fed. R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."[9] *Canada*, 831 F.2d at 925 (citation omitted). However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *See* Fed. R.Evid. 901(b)(providing ten approaches to authentication); Fed.R.Evid. 902 (self-authenticating documents need no extrinsic foundation).

### C. Most of Orr's Exhibits Are Inadmissible Because of Improper Authentication.

#### (a) Deposition Extracts

##### (i) *Exhibit Y: Deposition of Castle*

██ Exhibit Y purports to be an extract from the deposition of Castle in which she states that BOA's security officer Rick Parsons told her he knew the results of Orr's polygraph test.

This exhibit is not properly authenticated. The reporter's certification and the names of the deponent and the action are missing. The statement in Mirch's affidavit that Exhibit Y is a "true and correct copy" does not provide authentication because Mirch lacks personal knowledge of Castle's deposition. *See* Fed.R.Evid. 901(b)(1); *Beyene*, 854 F.2d at 1182. Nor can it be authenticated by reviewing its contents because Castle's name is not mentioned once in the deposition extract. *See* Fed.R.Evid. 901(b)(4). It is thus inadmissible.[10]

██ A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. *See* Fed.R.Evid. 901(b); Fed.R.Civ.P. 56(e) & 30(f)(1);[11] *Beyene*, 854 F.2d at 1182; *Pavone v. Citicorp Credit Servs., Inc.*, 60 F.Supp.2d 1040, 1045(S.D.Cal.1997) (excluding a deposition for failure to submit a signed certification from the reporter). Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." *See Beyene*, 854 F.2d at 1182. Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition. *See id.; Pavone*, 60 F.Supp.2d at 1045.

##### (ii) *Deficient References to Exhibit D in Orr's Statement of Undisputed Facts*

██ Orr's Statement of Undisputed Facts fails to cite the page and line numbers when referring to the deposition con-

---

8. "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." 31 Wright & Gold, *Federal Practice & Procedure: Evidence* § 7106, 43 (2000).

9. Federal Rule of Civil Procedure 56(e) requires that affidavits be made on personal knowledge, that the affiant be competent to testify to the matters stated therein, and that sworn or certified copies of all papers re-

ferred to in an affidavit be attached thereto. *See* Fed.R.Civ.P. 56(e).

10. The deposition extracts in Exhibits K, R, and T suffer from similar defects. They are unauthenticated and thus inadmissible.

11. Federal Rule of Civil Procedure 30(f)(1) requires that depositions be certified by the reporter. *See* Fed.R.Civ.P. 30(f)(1).

tained in Exhibit D.[12] This defect alone warrants exclusion of the evidence.[13] *See Huey v. UPS, Inc.,* 165 F.3d 1084, 1085 (7th Cir.1999) ("[J]udges need not paw over the files without assistance from the parties."); *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988) (parties must designate specific facts and their location in the record when relying on deposition testimony). The efficient management of judicial business mandates that parties submit evidence responsibly. We hold that when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence.[14]

#### (iii) Exhibit S: Deposition of Orr

Exhibit S purports to be extracts from Orr's deposition in which she states that Bourdeau saw negative documents about her at the FDIC in connection with BOA. It lacks a reporter's certification and does not identify the names of the deponent and the action. It is therefore not authenticated. Ordinarily, it would have to be excluded.

 However, a more complex problem arises when a district court admits into evidence, as it did here, a document that has been authenticated by a party but excludes the same document on the ground of inadequate authentication when submitted by another party.[15] Orr submitted Exhibit S in support of her opposition to

BOA's motion for summary judgment. The district court found that the extracts of Orr's deposition contained in Exhibit S were not authenticated. It excluded Exhibit S from evidence despite the fact that BOA had authenticated Orr's deposition and relied upon it in the summary judgment motion. We must determine whether under these circumstances, the district court abused its discretion in excluding Exhibit S because of inadequate authentication.

The Third Circuit examined this issue in *In re Japanese Elec. Prods. Antitrust Litig.,* 723 F.2d 238, 285–86 (3d Cir.1983), *rev'd on other grounds by Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It held that the trial court erred in finding that two diaries were authenticated as to some defendants but not others. *See id.* It explained:

> The evidence which suffices to establish authenticity should be evidence that is relevant on the limited question of genuineness: that is, evidence admissible against the party having such a relationship to the proffered materials that it is likely to know the facts as to genuineness. Once a prima facie case of genuineness against that party is established, the court should regard the materials as sufficiently authenticated against all parties, subject, of course, to the right of any party to offer evidence to the ulti-

---

12. Exhibit D purports to be Bourdeau's "affidavit." However, it contains fifteen pages of deposition testimony. It is not properly authenticated.

13. For this reason, BOA's authentication of Bourdeau's deposition does not render Exhibit D admissible.

14. The same holds true for references to an affidavit without citing to paragraph numbers.

15. This presents a conflict between the authentication requirement of Federal Rule of Evidence 901 and the "rule of completeness" of Federal Rule of Evidence 106, whose purpose is to avoid the "misleading impression created by taking matters out of context." *See* Fed.R.Evid. 106 advisory committee's note.

mate fact-finder disputing authenticity. The other parties are adequately protected, with respect to trustworthiness, by the requirement that the court must still rule on admissibility.

*Id.* at 285.

■ We have previously held that a district court's admission of unauthenticated evidence in a summary judgment motion is harmless error when the same item of evidence has been authenticated by an opposing party. *See Cristobal,* 26 F.3d at 1494; *Hal Roach Studios,* 896 F.2d at 1551. We now hold that when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.[16] *See In re Japanese,* 723 F.2d at 285. Thus, we recognize that an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility. *See* 31 Wright & Gold, *Federal Practice & Procedure: Evidence* § 7104 at 30–31 (2000) ("Once evidence offered against one party is deemed authentic, its authenticity is established as against all other parties as well.").

Exhibit S, which contains four pages of Orr's deposition testimony, was not properly authenticated by Orr. However, because these pages were included in portions of Orr's deposition authenticated by BOA, the district court manifestly erred in its decision to exclude Exhibit S for inadequate authentication.[17]

*(iv) Exhibit B: Deposition of Bourdeau*

Orr also failed to authenticate Exhibit B, which contains an extract from Bourdeau's deposition in which he states that BOA submitted disparaging documents about Orr to the FDIC.[18] However, because Bourdeau's deposition was authenticated by BOA, the district court manifestly erred in excluding Exhibit B for inadequate authentication. *See In Re Japanese,* 723 F.2d at 285–86.

#### (b) Trial Transcripts

■ Exhibits H, J, P, W, and X purport to be transcripts of testimony from the Bourdeau trial. They do not identify the names of the witness, the trial, and the judge and are not certified copies of the reporter's transcript. Accordingly, they are not authenticated. *See* Fed.R.Civ.P. 80(c)(requiring that testimony stenographically reported and offered into evidence at a later trial be "proved by the transcript thereof duly certified by the person who reported the testimony"); *Beyene,* 854 F.2d at 1182; *Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157, 161 (7th Cir.1963) ("an uncertified copy of testimony is inadmissible in a summary judgment proceeding").

■ Mirch cannot authenticate these exhibits by stating in his affidavit that they

---

**16.** However, when unauthenticated extracts of a document are submitted that do not readily indicate that they are parts of the same document authenticated by another party, the trial court is not required to deem them authentic. This qualification takes into account situations in which different pages of a document (such as a multi-volume deposition) are submitted by opposing parties, and only one party authenticates the pages it submits. In such instances, the trial court may not be able to determine if the unauthenticat-ed extracts are part of the same document as the authenticated extracts. It can then exclude the unauthenticated extracts.

**17.** BOA, in fact, relied on the same pages of Orr's deposition in the summary judgment motion.

**18.** It contains no cover page to identify the names of the deponent and the action. The reporter's certification is also missing.

are "true and correct copies." His statement lacks foundation even if he were present when the witnesses testified at the Bourdeau trial. *See Beyene*, 854 F.2d at 1182; *Pavone*, 60 F.Supp.2d at 1045.

### (c) Documents Obtained in Discovery

#### (i) Exhibit C: Memo Discussing FBI Report on Orr

■ Exhibit C purports to be a memo, dated and written on Nevada Department of Financial Institutions ("NDFI") letterhead, from Bob Geerhart ("Geerhart") to Scott Walshaw ("Walshaw"), both agents of the NDFI. In this memo, Geerhart discusses an FBI report identifying Orr as a suspect in a deposit theft at BOA. The memo identifies both the author and recipient and contains a signature next to their names. However, it lacks foundation because Orr has failed to submit an affidavit from Geerhart stating that he wrote the memo.[19] Mirch's affidavit does not lay a foundation for Exhibit C. Mirch neither wrote the memo nor witnessed Geerhart do so, and he is not familiar with Geerhart's signature. *See Hal Roach Studios*, 896 F.2d at 1550–51; *Canada*, 831 F.2d at 925.

■ Moreover, Exhibit C is not authenticated by having been produced in discovery in the Bourdeau action. Orr has not identified who produced it, and neither Geerhart nor the NDFI have admitted to producing the memo.[20] Further, neither Geerhart nor the NDFI is a party in Orr's action against BOA. Exhibit C is therefore inadmissible.[21] It matters not whether Exhibit C is hearsay.

#### (ii) Exhibit M: Letter from the NDFI to Bourdeau

■ Exhibit M purports to be a letter from Walshaw to Bourdeau, permitting Tahoe Bank to "transact business preliminary to its organization." It is not authenticated because Orr has failed to submit an affidavit or deposition testimony from Walshaw stating that he wrote the letter. Because Orr attempted to introduce Exhibit M by attaching it to Mirch's affidavit, Federal Rule of Civil Procedure 56(e) requires that Mirch have personal knowledge of the letter. Had Orr submitted the letter by attaching it to an exhibit list (rather than to Mirch's affidavit), the alternative means to authentication permitted by Federal Rule of Evidence 901(b)[22] and 902[23] would have to be consid-

---

**19.** Likewise, Exhibits L, N, and O, purporting to be letters sent to Walshaw from Larry Hickman, a CPA who reviewed Tahoe Bank's application, are not authenticated because Orr has failed to submit an affidavit from Hickman stating that he wrote the letters. They are thus inadmissible.

**20.** *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir.1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) (same); 31 *Federal Practice & Procedure: Evidence* § 7105, at 39("Authentication can also be accomplished through judicial admissions such as ... production of items in response to ... [a] discovery request.").

**21.** Exhibits F, G, and I suffer from a similar defect. They cannot be authenticated by way of production in discovery because Mirch has not identified who produced them, and BOA has not admitted to having produced them.

**22.** Federal Rule of Evidence 901(b) provides: "By way of illustration only, and not by way of limitation, the following are examples of authentication ... conforming with the requirements of this rule." Fed.R.Evid. 901(b). This rule provides ten non-exclusive methods of authentication, one of which is personal knowledge.

**23.** Federal Rule of Evidence 902 provides twelve categories of self-authenticating documents for which "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required." Fed.R.Evid. 902.

ered.[24] Orr did not do so. The district court's exclusion of Exhibit M was therefore proper.

### (iii) Exhibit Q: Letter from FDIC to Bourdeau

Exhibit Q purports to be a letter from the Regional Director of the FDIC to Bourdeau denying Tahoe Bank's application. It provides: "[Y]our departure from ... Bank of America under unfavorable circumstances reflect[s] poorly on your stability for positions as a director or senior officer."

■ The district court properly found that Exhibit Q was not authenticated because Orr introduced the letter by attaching it to Mirch's affidavit. Mirch lacks personal knowledge of the letter.[25] The district court's exclusion of Exhibit Q was therefore proper.

### D. Hearsay.

As discussed above, the district court's finding that Exhibits B and S were not authenticated was erroneous. Our next inquiry is whether the exhibits are inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807. *See* Fed.R.Evid. 802; 30B *Federal Practice & Procedure: Evidence* § 7031 at 279.

■ We review the district court's construction of the hearsay rule de novo and its decision to exclude evidence under the hearsay rule for an abuse of discretion. *See United States v. Bao,* 189 F.3d 860, 863–64 (9th Cir.1999). We find that Exhibits B and S are both inadmissible hearsay.

### (a) Exhibit B

■ Exhibit B consists of an extract from Bourdeau's deposition. In that extract, he states that when he visited the FDIC, an employee gave him an FBI report which stated that Orr had failed her

---

**24.** Federal Rule of Civil Procedure 56(e) does not require that all documents be authenticated through personal knowledge when submitted in a summary judgment motion. Such a requirement is limited to situations where exhibits are introduced by being attached to an affidavit. *Compare* Fed.R.Civ.P. 56(e) (bearing the heading "Form of Affidavits"), *with* Fed.R.Evid. 901(b) (providing ten methods to authenticate evidence). For instance, documents attached to an exhibit list in a summary judgment motion could be authenticated by review of their contents if they appear to be sufficiently genuine. *See* Fed.R.Evid. 901(b)(4)(authenticity may be satisfied by the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."); *United States v. Whitworth,* 856 F.2d 1268, 1283 (9th Cir.1988) (authenticating letters by the linkage between the dates of postmarks and defendant's location on the days letters

mailed); *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1284–85(9th Cir.1983) (authenticating a diary under Rule 901(b)(4) by reviewing its contents); *Alexander Dawson, Inc.,* 586 F.2d at 1302 ("[t]he content of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for [its authentication]").

**25.** Moreover, Exhibit Q does not present a triable issue. It only suggests that Tahoe Bank's application was denied by the FDIC because of concerns with Bourdeau. At best, it is circumstantial evidence that BOA submitted negative information *about Bourdeau* to the FDIC. Orr's contention that a trier of fact could infer from this that BOA submitted disparaging documents to the FDIC *about her* is unpersuasive.

polygraph and was a suspect in a deposit loss at BOA. Bourdeau also states that the same employee told him that BOA had submitted negative documents about Orr to the FDIC. Exhibit B was offered by Orr to establish that BOA had submitted negative documents about her to the FDIC. It was offered to prove the truth of the matter asserted and is thus hearsay. *See* Fed.R.Evid. 801(c). There being no exceptions, Exhibit B is inadmissible.

### (b) Exhibit S

 Exhibit S is an excerpt from Orr's deposition in which she states that Bourdeau told her that he saw disparaging documents about her at the FDIC. It was offered by Orr as circumstantial evidence to show that BOA submitted these documents to the FDIC. Although it was not offered to prove the truth of the matter asserted, it is nonetheless hearsay. Orr seeks to draw the inference from it that BOA *submitted* the documents to the FDIC. This inference depends on the truth of Bourdeau's statement that he actually *saw* the documents. *See* Fed.R.Evid. 801(c); *United States v. Cowley,* 720 F.2d 1037, 1044–45 (9th Cir.1983) (holding that

the postmark on a letter is hearsay when offered to prove that the letter was mailed from a particular location); *United States v. Jefferson,* 925 F.2d 1242, 1252–53 (10th Cir.1991) ("Whether evidence is offered as circumstantial evidence as opposed to direct evidence has nothing to do with whether it constitutes inadmissible hearsay").[26] In other words, the inference that BOA submitted disparaging documents about Orr to the FDIC depends on whether Bourdeau actually saw the documents at the FDIC. Bourdeau's statement to Orr is therefore hearsay. There being no applicable exceptions, it is inadmissible.[27]

### II. Certain Tort Claims by Orr Are Barred by Nevada's Statute of Limitations.

Orr contends the district court erred in finding that the statute of limitations governing her tort claims began to run in September 1995 when she was told by Bourdeau that BOA had submitted negative information about her to the FDIC.

 Whether a claim is barred by the applicable statute of limitations is reviewed de novo. *See Santa Maria v. Pac. Bell,*

---

**26.** *See also* Edward J. Imwinkelried, *Evidentiary Foundations* 312 (4th ed. 1998). Professor Imwinkelried explains:

> [A] statement is deemed hearsay only when the immediate inference the proponent wants to draw is the truth of the assertion on the statement's face.... When the proponent offers the statement for a nonhearsay purpose, we are primarily interested simply in the fact that the statement was made. The fact *of* the statement is relevant; the truth of the facts *in* the statement is irrelevant.
> *Id.*

**27.** In ruling on the admissibility of Exhibits B and S, the district court held that deposition testimony, regardless of its contents, is hearsay when submitted in a summary judgment motion. Its holding was erroneous. Deposition testimony, irrespective of its contents, is

ordinarily hearsay when submitted at trial or a motion hearing involving live witness testimony but not in a summary judgment motion. *See* Fed.R.Civ.P. 56(c) & (e) (allowing the use of deposition testimony in a summary judgment motion); *Angelo v. Armstrong World Indus., Inc.,* 11 F.3d 957, 962 (10th Cir.1993) (holding that deposition testimony is normally inadmissible hearsay when submitted at trial); 8A Wright, Miller & Marcus, *Federal Practice & Procedure: Civil* § 2142, 164 (2d ed. 1994) ("A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of [Fed. R. Civ. P. 32(a)] on use of a deposition at trial are not satisfied.") However, the district court's error was not prejudicial because the *contents* of both depositions contained in Exhibits B and S are inadmissible hearsay.

202 F.3d 1170, 1175 (9th Cir.2000). When the statute of limitations begins to run is a question of law also reviewed de novo. *See Harvey v. Waldron,* 210 F.3d 1008, 1013 (9th Cir.2000); *In re DeLaurentiis Entm't Group, Inc.,* 87 F.3d 1061, 1062 (9th Cir.1996).

### A. Orr Discovered or Should Have Discovered the Necessary Facts Supporting Her Tort Claims by September 1995.

■ Under Nevada law, which governs Orr's tort claims, the statute of limitations begins to run "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen,* 106 Nev. 271, 274, 792 P.2d 18 (1990). However, when a plaintiff has not discovered her injury or cause of injury at the time of its occurrence, the statute of limitations is tolled "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.; see Siragusa v. Brown,* 114 Nev. 1384, 1393, 971 P.2d 801 (1998); *Sorenson v. Pavlikowski,* 94 Nev. 440, 443–44, 581 P.2d 851 (1978).

■ Whether a plaintiff has discovered or should have discovered the cause of her injury is ordinarily a question of fact. *See Siragusa,* 114 Nev. at 1400, 971 P.2d 801. However, when "uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim," such a determination can be made as a matter of law. *Id.* at 1401, 971 P.2d 801.

■ Orr contends she did not discover the cause of her injury until 1997 when she came across documentary evidence (Exhibit C) in Bourdeau's trial indicating that the FDIC had received an FBI report suspecting her of criminal conduct at BOA. Orr, however, testified in her deposition that by September 1995, Bourdeau told her that BOA had made negative comments about her to the FDIC and that she "didn't have any reason to doubt that."[28] Despite her absence of doubt, she failed to investigate this matter. This is evident from her deposition testimony: "I wanted it to go away. I was just wanting to move on with my life." Orr failed to exercise reasonable diligence in attempting to discover the cause of her injury. This bars her from asserting a "discovery rule" tolling defense to Nevada's statute of limitations. *See Siragusa,* 114 Nev. at 1394, 971 P.2d 801. Thus, we conclude that Orr discovered or should have reasonably discovered the necessary facts supporting her tort claims by September 1995 and that the statute of limitations for these claims began to run at that time.

### B. Nevada's Limitations Period Bars Some of Orr's Tort Claims.

■ Orr's Complaint contains tort claims for (1) intentional interference with existing contractual relations, (2) intentional interference with prospective business relations, (3) business disparagement, (4) slander, and (5) intentional infliction of emotional distress. Under Nevada's applicable statute of limitations, Orr had two years from September 1995 to file her third, fourth and fifth tort claims. *See* Nev.Rev.Stat. § 11.190(4)(c) (2001) (providing a two-year limitations period for "[a]n action for libel, slander, assault, battery, false imprisonment or seduction");

---

**28.** Orr states in her affidavit that she did not discover the cause of her injury until 1997. We find her affidavit to be a sham submitted in an attempt to create a triable issue. Because Orr's deposition testimony contradicts her affidavit, Orr has not raised a triable issue of fact on the statute of limitations issue. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991).

Nev.Rev.Stat. § 11.190(4)(e) (2001) (providing a two-year limitations period for "an action to recover damages for injuries to a person ... caused by the wrongful act or neglect of another").[29]

Orr filed her Complaint against BOA on August 24, 1998. The two-year statute of limitations on her claims for business disparagement, slander and intentional infliction of emotional distress began to run in September 1995 and expired in September 1997. Accordingly, these tort claims are time-barred.

■ However, Orr's claims for (1) intentional interference with existing contractual relations and (2) intentional interference with prospective business relations are subject to Nevada's four-year limitations period and are thus *not* time-barred.[30] *See* Nev.Rev.Stat. § 11.190(2)(c); *Sorenson*, 94 Nev. at 444, 581 P.2d 851. The district court's contrary finding was erroneous.

## III. Orr's Tort Claims Are Unsupported by Evidence.

■ The error, however, was not prejudicial. Orr's surviving tort claims fail for lack of evidence. These claims are based on BOA's alleged submission of disparaging information about Orr to the FDIC. However, there is no admissible evidence to support this claim. Orr's reliance on Bourdeau's deposition testimony in Exhibit B is unavailing because it is inadmissible hearsay.

Moreover, the record supports BOA's position. Orr admits in her deposition that she does not know with certainty whether BOA submitted disparaging documents about her to the FDIC. Castle and Underwood assert in their affidavits that they disclosed nothing about Orr to the FDIC. Further, the FBI agent who administered Orr's polygraph test said he did not disclose its results to BOA or anyone outside the FBI.

Orr's contention is further undermined by the Nevada Supreme Court's holding in *Bourdeau*, which suggests that information disclosed by BOA employees to the FDIC in its investigation of Orr's fitness to serve as an officer of Tahoe Bank would be subject to conditional privilege. BOA would not be liable unless it made the statements with actual malice, knowledge of their falsity, or reckless disregard for their truth. *See Bourdeau*, 115 Nev. at 266, 982 P.2d 474.

Orr has failed to establish that BOA made any statements about her to the FDIC. Nor can she establish that the alleged statements were made with actual malice, knowledge of their falsity, or reckless disregard for their truth. Orr's tort claims thus fail for lack of evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (the moving party's burden to show the absence of a genuine issue of material fact can be met simply by showing an absence of evidence "sufficient to establish the existence of an element essential to[the non-

---

**29.** Orr's claim for intentional infliction of emotional distress comes under the two-year limitations period of Nevada Revised Statutes § 11.190(4)(e) as it involves "injur[y]" to her "person" by the "wrongful act" of another. *See Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir.1989) (Nevada's residual statute of limitations applies to all personal injuries whether caused by negligent or intentional conduct).

**30.** Nevada's statute does not provide a specific limitations period for intentional interference with existing and prospective business relations. However, given that these counts "sound[ ] in tort for interference with intangible property interests," the four-year limitations period of Nevada Revised Statutes § 11.190(2)(c) is applicable. *See Sorenson*, 94 Nev. at 444, 581 P.2d 851.

moving] party's case, and on which that party will bear the burden of proof at trial."); *Beyene,* 854 F.2d at 1181–82.

## IV. There Is No Triable Issue of Material Fact as To Orr's Claims for Violation of RICO, the Sherman Act, and the Employee Polygraph Protection Act.

### A. RICO: Mail & Wire Fraud

▆ To maintain a viable private RICO action, Orr must establish that BOA engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(a)-(c); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1398–99 (9th Cir.1986). "Racketeering activity" is defined by 18 U.S.C. § 1961(1)(B) as any act "indictable" under enumerated criminal statutes, including 18 U.S.C. § 1341, which criminalizes mail fraud, and 18 U.S.C. § 1343, which criminalizes wire fraud. *See* 18 U.S.C. § 1961(1)(B). The elements of mail and wire fraud consist of (1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mail or interstate telephone wires in furtherance thereof. *See Franciscan Ceramics, Inc.,* 818 F.2d at 1469.

▆ Orr contends BOA engaged in a scheme to defraud the organizers of Tahoe Bank by submitting negative information about her to the FDIC in an attempt to prevent the formation of Tahoe Bank. However, Orr has presented no admissible evidence to substantiate this claim. Indeed, Orr cannot establish that BOA was ever in possession of her polygraph test results or the corresponding FBI memo

that allegedly suspected her of criminal conduct.

Nor can Orr establish that BOA submitted negative information about her to the FDIC. The only evidence supporting this accusation is contained in Exhibits B and S, which are inadmissible hearsay. In the absence of evidence of a scheme to defraud, Orr cannot establish a pattern of racketeering activity. Thus, Orr's RICO claim fails. *See Rothman v. Vedder Park Mgmt.,* 912 F.2d 315, 316 (9th Cir.1990); *Franciscan Ceramics, Inc.,* 818 F.2d at 1469.

### B. Sherman Act, 15 U.S.C. § 1

▆ Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. To prevail under § 1 of the Sherman Act, Orr must establish that (1) BOA entered into a contract, combination, or conspiracy, (2) which unreasonably restrained trade, (3) affected interstate commerce, and (4) caused her injury.[31] *Compare Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 854 (9th Cir.1995), *with Kaiser Cement Corp. v. Fischbach and Moore, Inc.,* 793 F.2d 1100, 1104(9th Cir. 1986) ("[W]ithout a showing of injury, plaintiff cannot recover.").

▆ In her antitrust claim, Orr contends that BOA entered into an agreement with other banks in Incline Village to restrain competition by preventing the formation of Tahoe Bank, and that it accomplished this by submitting disparaging information about Orr to the FDIC. How-

---

**31.** Unreasonable restraint of trade in violation of § 1 of the Sherman Act can be established "under either a per se rule of illegality or a rule of reason analysis." *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1410 (9th Cir. 1991). To maintain a claim under a rule of reason analysis, Orr must show (1) an agree-

ment or conspiracy among BOA and one or more persons or banks (2) by which they intend to harm or restrain competition; and (3) "which actually injures competition." *See Oltz v. St. Peter's Cmty. Hosp.,* 861 F.2d 1440, 1445 (9th Cir.1988).

ever, there is no evidence of an agreement among BOA and other banks in Incline Village to prevent the formation of Tahoe Bank. Indeed, Orr admits in her deposition that she is not aware of any such agreement. Moreover, Orr's reliance on Bourdeau's deposition testimony in this regard is unavailing because it is inadmissible hearsay. Nor can Orr establish a restraint of trade because the Nevada Banking Company purchased Tahoe Bank and opened a branch in Incline Village that became successful "beyond [Orr's] wildest dreams."

■ Orr has failed to present any admissible evidence in support of her antitrust claim. To defeat summary judgment, she "must respond with more than mere hearsay and legal conclusions." *Kaiser Cement Corp.*, 793 F.2d at 1104. She "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348 (antitrust case). The district court's grant of summary judgement on this claim was therefore proper.[32] *See Sicor Ltd.*, 51 F.3d at 853.

### C. Employee Polygraph Protection Act ("EPPA")

■ The EPPA, 29 U.S.C. §§ 2001–09, restricts employers from using, taking adverse employment action on the basis of, or disclosing information obtained from an employee's polygraph test. *See* 29 U.S.C. §§ 2002, 2008; *Saari v. Smith Barney, Harris Upham & Co., Inc.*, 968 F.2d 877, 880(9th Cir.1992); *Veazey v. Communications & Cable*, 194 F.3d 850, 858 (7th Cir. 1999). Section 2008 of the EPPA prohibits an employer from disclosing information

about an employee's polygraph test to anyone other than the following: (1) the employee or a person designated in writing by him, (2) the employer that requested the test, (3) "any court[or] governmental agency ... pursuant to an order from a court of competent jurisdiction," and (4) "a governmental agency, but only insofar as the disclosed information is an admission of criminal conduct." 29 U.S.C. § 2008.[33]

Orr contends BOA disclosed her polygraph test results to the FDIC in violation of the EPPA. In support of her position, she relies on Exhibits B, X, and Y. However, none of these exhibits are admissible. Exhibit B is inadmissible hearsay. Exhibits X and Y are not authenticated. Orr's EPPA claim thus fails for lack of evidence establishing that BOA disclosed the results of her polygraph test.

### V. The District Court Did Not Abuse Its Discretion in Denying Orr's Request for a Continuance.

■ Orr contends the district court abused its discretion in denying her request to continue the June 6, 2000 summary judgment hearing because her counsel was in trial at the time and the FDIC had not produced certain subpoenaed documents.

We review the district court's denial of Orr's request for a continuance for an abuse of discretion. *See Weinberg v. Whatcom County*, 241 F.3d 746, 750–51 (9th Cir.2001); *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989). There was no such abuse.

The district court had continued pretrial dates on two prior occasions. The final pretrial order set discovery cut-off for April 18, 2000 and the last day for hearing

---

**32.** Orr did not argue in her Opening Brief that BOA violated § 2 of the Sherman Act. She has thus waived her right to appeal this issue. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378–79 n. 6.

**33.** For an examination of the meaning of the term "disclosure" under the EPPA, see *Long v. Mango's Tropical Cafe, Inc.*, 972 F.Supp. 655, 658–59 (S.D.Fla.1997).

dispositive motions for June 6, 2000. It stated: "No further continuances will be permitted." Given the discovery cut-off of April 18, 2000, Orr's request for a continuance to obtain additional discovery from the FDIC was groundless. Orr · should have filed a motion to compel production of documents prior to the discovery cut-off.

Orr's request for a continuance due to scheduling conflicts was likewise devoid of merit because two previous continuances to pretrial dates had been granted. Moreover, Orr had notice from December 7, 1999 that the final day for filing dispositive motions was June 6, 2000 and that no further continuances would be granted. That Orr's counsel was in the midst of another trial on the day of the summary judgment hearing does not as a matter of right entitle her to a continuance. Orr lacked diligence as she waited for two weeks after being served with the summary judgment papers before seeking a continuance. Despite this, the district court gave Orr five days to cure the evidentiary defects in her opposition papers following the hearing. She failed to do so. Under these circumstances, we cannot say that the district court abused its discretion in denying Orr's request for a continuance. *See Canada*, 831 F.2d at 925–26.

### VI. BOA's Motion for Sanctions for Filing a Frivolous Appeal.

BOA moves for sanctions against Orr for filing a frivolous appeal pursuant to Federal Rule of Appellate Procedure 38. We deny BOA's motion because some of Orr's evidentiary arguments are meritorious, and the result of the appeal is not obvious.[34] *See Goss Golden W. Sheet Metal, Inc. v. Sheet Metal Workers Int'l. Union*, 933 F.2d 759, 765(9th Cir. 1991); *Gayle Mfg. Co., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 910 F.2d 574, 584 (9th Cir.1990).

### CONCLUSION

Orr's exhibits are mostly inadmissible due to lack of authentication or hearsay. As a consequence, she cannot raise a triable issue of material fact as to any of the counts in her Complaint. Further, even if meritorious, some of her tort claims are barred by Nevada's statute of limitations. We thus affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

34. Federal Rule of Appellate Procedure 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R.App. P. 38. An appeal is frivolous "if the result is obvious or the appellant's arguments are wholly without merit." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1417 (9th Cir.1990). The decision whether to impose Rule 38 sanctions lies within the discretion of the court of appeals. *See Urban v. C.I.R.*, 964 F.2d 888, 890 (9th Cir.1992).