**Jason DeBAUGH, Plaintiff,**

v.

**GREYHOUND LINES, INC.,
a Delaware Corporation,
Defendant.**

No. 08–CV–1285–HU.

United States District Court,
D. Oregon,
Portland Division.

Feb. 25, 2010.

E.J. Simmons, Attorney at Law, Portland, OR, for Plaintiff.

Roman D. Hernandez, Sharon E. Rye, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for Defendant.

## ORDER

BROWN, District Judge.

Magistrate Judge Dennis James Hubel issued Findings and Recommendation (# 70) on November 30, 2009, in which he recommended the Court grant Defendant Greyhound Lines, Inc.'s Motion (# 43) for Partial Summary Judgment as to Plaintiff's claim for negligent entrustment. Plaintiff Jason DeBaugh filed timely Objections to the Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th

Cir.2003) (*en banc*); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

## BACKGROUND

On July 28, 2009, Plaintiff filed his Second Amended Complaint seeking in excess of one million dollars in damages for injuries he suffered when he collided with a bus operated by Defendant Greyhound Lines, Inc., and driven by Dan O'Connor, Defendant's employee at the time of the collision. Plaintiff asserts claims against Defendant for negligence, negligence *per se*, and negligent entrustment.

On August 28, 2009, Defendant filed its Motion for Partial Summary Judgment as to Plaintiff's claim for negligent entrustment. On September 15, 2009, Plaintiff filed his Response, and Defendant filed its Reply on October 7, 2009.

On November 30, 2009, Magistrate Judge Hubel issued Findings and Recommendation in which he recommends the Court grant Defendant's Motion for Partial Summary Judgment. Plaintiff filed timely objections on December 15, 2009, and Defendant filed its Response on December 21, 2009.

## STANDARDS

As stated in the Findings and Recommendation, the standards for a negligent-entrustment claim under Oregon law are as follows:

> To establish a negligent entrustment claim, plaintiff must prove that " 'there was an entrustment and that the entrustment was negligent.' " *Piskorski v. Ron Tonkin Toyota, Inc.*, 179 Or.App. 713, 718–19, 41 P.3d 1088, 1091 (2002)(quoting *Mathews v. Federated Serv. Ins. Co.*, 122 Or.App. 124, 133, 857 P.2d 852, 857 (1993)).... As *Mathews* explains, when the plaintiff does not allege that there was a special relationship with the defendant, the plaintiff must

show that (1) the entrustment was unreasonable under the circumstances, (2) it caused harm to the plaintiff, and (3) the risk of harm to the plaintiff (or the class of persons to whom he belongs) was reasonably foreseeable. *Mathews*, 122 Or.App. at 133–34, 857 P.2d at 857. Additionally, "an allegation that a defendant knew about a dangerous condition must be accompanied by claimed facts showing defendant's knowledge of unreasonable risk of danger." *Mathews*, 122 Or.App. at 135, 857 P.2d at 858 (internal quotation omitted).

## DISCUSSION

Plaintiff objects to the following parts of the Findings and Recommendation: (1) the Magistrate Judge's acceptance of the Declaration of Dan O'Connor as credible and as evidence that O'Connor was not fatigued when the accident occurred; (2) the Magistrate Judge's finding that O'Connor's reference to fatigue as a reason for not taking an additional shift two-and-a-half months prior to the accident "was too remote in time to prevent summary judgment"; (3) the Magistrate Judge's reliance on the decision by the Eastern District of Pennsylvania in *Achey v. Crete Carrier Corp.*, No. 07–CV–3592, 2009 WL 101843 (E.D.Pa. Jan. 14, 2009); and (4) the Magistrate Judge's "setting aside" of the Declaration of Tom Welch, Plaintiff's driver-safety expert. Thus, Plaintiff contends a genuine issue of material fact exists as to his negligent-entrustment claim with respect to whether Defendant was aware of a reasonably foreseeable risk of harm that made its entrustment of a bus to Plaintiff unreasonable.

## I. O'Connor's Declaration.

Plaintiff contends the Magistrate Judge erred when he found credible O'Connor's statement in his Declaration that fatigue

did not affect his driving at the time of the accident and when he found O'Connor's Declaration supports a "no-fatigue characterization." Plaintiff, in fact, contends a genuine issue of material fact exists with respect to whether Defendant was aware O'Connor suffered from fatigue problems at the time of the accident, and, therefore, the Court should deny Defendant's Motion for Partial Summary Judgment as to Plaintiff's negligent-entrustment claim.

In paragraph 7 of his Declaration, O'Connor denies any sleep disorder or abnormal issues with fatigue:

> In addition to successfully passing drug and alcohol testing, I also successfully passed each medical examination undertaken by a physician while I was employed by Greyhound. At no time have I been diagnosed by a physician as having had sleep disorders like sleep narcolepsy, sleep apnea, or insomnia. I do not believe that I have abnormal issues with fatigue and I have never had a medical diagnosis that led a physician to conclude that I have problematic issues with fatigue.

Moreover, Plaintiff did not dispute paragraphs four and five of Defendant's Concise Statement of Material Facts:

> Mr. O'Connor successfully passed a drug and alcohol urinalysis and a medical examination which were required as part of the conditional job offer that he received. The physician who conducted the medical exam did not identify any medical issues affecting Mr. O'Connor such as sleep apnea, sleep narcolepsy, or insomnia, nor any other issues related to chronic fatigue that could have affected his driving ability.
>
> \*     \*     \*
>
> Mr. O'Connor received additional medical exams as part of Greyhound's compliance with federal regulations, and at no time did any physician ever identify any type of sleep disorders that would

have affected his driving, nor was any issue related to chronic fatigue identified. Indeed, Mr. O'Connor has never been diagnosed with sleep disorders, nor has he ever been diagnosed with chronic fatigue.

Nevertheless, Plaintiff points to the statement that O'Connor made to his supervisor two-and-a-half months prior to the accident when he did not accept an extra shift after Defendant requested him to do so: "[A]t times I am to[o] fatigue[d] or have other issues to be taken care of." Although this statement was addressed in detail in the Findings and Recommendation, Plaintiff maintains it establishes that Defendant was aware there was an unreasonable risk in allowing O'Connor to drive its bus.

Defendant, in turn, asserts the Magistrate Judge did not make a credibility determination as to O'Connor's Declaration. According to Defendant, the Magistrate Judge weighed the evidence in light of all reasonable interpretations of O'Connor's statements.

■ The Magistrate Judge pointed out numerous facts in the record that support Defendant's contention that no rational juror could find it was aware of an unreasonable risk of harm in allowing O'Connor to drive its bus, including: (1) O'Connor's extensive experience driving passenger vehicles; (2) O'Connor's clean driving record; (3) O'Connor's multiple successful drug-and-alcohol screenings before and immediately after the accident; (4) the fact that O'Connor passed periodic medical screenings in which none of the examining physicians diagnosed him with any medical condition that causes fatigue or that would have affected his driving ability; (5) the fact that O'Connor received 180 hours of training from Defendant, including training in the "Smith System" of defensive driving, and (6) the fact that there is noth-

ing in the record to confirm the accident occurred at night or near the end of a shift when O'Connor may have been most likely to be affected by fatigue. Considering these facts in context with O'Connor's single statement to his supervisor more than two months prior to the accident, the Magistrate Judge found no reasonable juror could conclude that Defendant was aware of an unreasonable risk of harm in allowing O'Connor to operate its bus.

Nevertheless, Plaintiff contends the Court should review a video excerpt of the deposition of O'Connor. Plaintiff asserts O'Connor in his deposition contradicts that part of his statement to his supervisor that at times he has "other issues to be taken care of" as a reason for not accepting extra shifts. Plaintiff provides a link to a website with the video excerpt, but he does not provide any authentication of the deposition by way of an affidavit or other certification and does not cite any authority that the Court may view the excerpt without such authentication. In any event, O'Connor only states in the excerpted video that he did not have any "other issues to take care of" in April 2007. That statement does not contradict O'Connor's earlier explanation to his supervisor. Thus, even if the Court may properly consider the video deposition excerpt, it does not discredit O'Connor's Declaration.

Finally, without identifying the portion of the Findings and Recommendation to which he is objecting, Plaintiff also contends Tom Salazar, Operations Manager for Defendant's Portland Terminal, made the following incorrect statement in paragraph 11 of his Declaration: "[T]here was nothing in the interview notes that indicated that Mr. O'Connor had any *problem* with fatigue or sleep issues" (emphasis added). This statement, however, is not inconsistent with O'Connor's statement that at times he is too fatigued to take extra shifts. Moreover, Salazar stated he believed O'Connor's single reference to fatigue was not a sufficient ground for him to doubt the quality of O'Connor's driving. In other words, Salazar did not believe there was an unreasonable risk associated with entrusting O'Connor to drive Defendant's bus based on a problem O'Connor had with fatigue. In fact, as the Magistrate Judge noted:

> The only fact is a single incident, two and one-half months before the accident at issue in this case, in which O'Connor recited fatigue as one reason why he did not respond to a call for *extra* shifts. This creates no issue regarding O'Connor ever having driven while fatigued. In fact, it most reasonably suggests just the opposite: he did not want to drive an extra shift because he was concerned about fatigue. No reasonable juror could conclude, based only on the April 11, 2007 reference to fatigue as one cause for a "Miss Out," that defendant had a duty to investigate further whether O'Connor drove regular shifts while fatigued.

Findings and Recommendation at 11 (emphasis in original.)

Thus, the Court concludes the Magistrate Judge correctly concluded O'Connor's Declaration did not create an issue of material fact in light of the record as a whole.

## II. Remoteness of Plaintiff's Evidence of O'Connor's Fatigue.

Plaintiff also contends the Magistrate Judge erred when he concluded O'Connor's statement to his supervisor about fatigue was too remote to defeat summary judgment.

Plaintiff cites a single Oregon case, *Piskorski v. Ron Tonkin Toyota, Inc.*, to support his argument that the Magistrate Judge erred when he found O'Connor's statement about fatigue too remote to de-

feat summary judgment. *See* 179 Or.App. 713, 41 P.3d 1088 (2002). In *Piskorski,* the Oregon Court of Appeals denied the plaintiff's appeal of summary judgment against plaintiff's negligent-entrustment claim. *Id.* at 715–22, 41 P.3d 1088. According to Plaintiff, the court held the defendant's entrustment of a driver who had entered a diversion program for driving under the influence of intoxicants three years prior to the entrustment was not negligent. By comparison, Plaintiff contends O'Connor's statement is relevant because it was made less than three months prior to the entrustment. In *Piskorski,* however, the court did not address the sufficiency of the plaintiff's evidence because the plaintiff did not assert at the summary-judgment stage that his evidence was sufficient to create a genuine issue of material fact. *Id.* at 717, 41 P.3d 1088. In any event, the Oregon Court of Appeals did not state any general rule that applies to a negligent-entrustment claim with respect to the remoteness of a defendant's alleged knowledge of a risk of harm arising from an entrustment. Thus, *Piskorski* does not provide a legal basis for altering the Magistrate Judge's Findings and Recommendation.

The Court notes the Magistrate Judge did not, as Plaintiff contends, conclude the remoteness of O'Connor's statement by itself was insufficient to overcome summary judgment. The Magistrate Judge only considered the remoteness of O'Connor's statement from the time of the accident to be one of a number of considerations in reaching his recommendation. As noted, the Court finds the Magistrate Judge's reasoning is sound in light of the entire record.

### III. Reliance on *Achey.*

Plaintiff also asserts the Magistrate Judge erred by relying on *Achey,* a decision by the Eastern District of Pennsylvania, because Oregon law governs Plaintiff's negligence claims, and, in any event, the

*Achey* court focused on the availability of punitive damages under Pennsylvania law.

Defendant contends the Magistrate Judge considered *Achey* only in the context of the Court's consideration of the testimony of Plaintiff's expert and that the Magistrate Judge properly applied Oregon law with respect to Plaintiff's negligent-entrustment claim on pages eight and nine of the Findings and Recommendation.

The Magistrate Judge noted he only found the *Achey* court's reasoning "relevant" to his consideration of the expert testimony of Plaintiff's expert. Plaintiff does not cite any authority to support his contention that the Magistrate Judge's consideration of *Achey* as relevant authority for this limited purpose is in error, and, in fact, Plaintiff does not provide any legal basis under Oregon law to find that *Achey* is in conflict with Oregon negligent-entrustment law.

### IV. Declaration of Tom Welch, Plaintiff's Expert.

Plaintiff also objects to the Findings and Recommendation on the ground that the Magistrate Judge "set[ ] aside" the Declaration of Tom Welch, Plaintiff's driver-safety expert, in which he stated Defendant negligently entrusted its bus to O'Connor. Defendant, in turn, contends the Magistrate Judge appropriately considered Welch's Declaration and found it to be speculative with respect to the material fact at issue: Whether Defendant had knowledge of an unreasonable risk of harm in entrusting O'Connor to drive its bus.

The Court notes the Magistrate Judge did not discredit Welch's expertise, but instead he found Welch's statement about the existence of a "pattern" of fatigue was "nothing more than speculation." The Magistrate Judge found Welch's statement that there were a number of alleged complaints about O'Connor's driving were not

substantiated by the summary-judgment record nor did the record establish a "fatigue problem" existed that should have alerted Defendant that O'Connor was unreasonably dangerous as a driver.

Plaintiff also contends Welch's Declaration establishes that Defendant has a higher standard of care as an operator of public transportation, and, therefore, Defendant has a duty to prevent fatigued drivers from operating its busses. Again, however, the Magistrate Judge did not find any evidence in the record to support Plaintiff's contention that O'Connor was actually fatigued at the time of the accident or that Defendant knew O'Connor was fatigued. Moreover, the Magistrate Judge concluded the reasonable-person standard rather than a higher industry standard applies to determine whether Defendant's conduct was reasonable under the circumstances because Plaintiff did not show a special relationship exists between Defendant and Plaintiff as required under *Mathews v. Federated Service Insurance Co.*, 122 Or.App. 124, 133–34, 857 P.2d 852 (1993).

Thus, the Court concludes the Magistrate Judge properly considered Welch's Declaration in light of this record.

In summary, this Court has carefully considered Plaintiffs' Objections and concludes they do not provide a basis to modify the Findings and Recommendation. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation.

## CONCLUSION

The Court **ADOPTS** Magistrate Judge Hubel's Findings and Recommendation (# 70) and, accordingly, **GRANTS** Defendant's Motion (# 43) for Partial Summary Judgment.

IT IS SO ORDERED.

## FINDINGS & RECOMMENDATION/ORDER

HUBEL, United States Magistrate Judge:

Plaintiff Jason DeBaugh brings this negligence and negligent entrustment action against defendant Greyhound Lines, Inc., for injuries sustained when a bus driven by defendant's then-employee collided with plaintiff who was on a motorcycle. Defendant moves for summary judgment only as to the negligent entrustment claim. Defendant also moves to strike the declaration of plaintiff's expert submitted by plaintiff in opposition to the summary judgment motion.

I recommend that the summary judgment motion be granted. Because I recommend granting the summary judgment even when plaintiff's expert's declaration is considered, I deny the motion to strike the declaration as moot.

## BACKGROUND

On June 29, 2007, Dan O'Connor, a former Greyhound driver, was involved in an accident with plaintiff when O'Connor was on duty. The accident occurred when O'Connor turned left across oncoming traffic and hit plaintiff who was proceeding north on Northwest Broadway.

O'Connor began working for defendant as a bus driver in February 2006. Tom Salazar, Operations Manager for defendant's Portland Terminal, reviewed O'Connor's application and hired him after (1) noting plaintiff's sixteen years of commercial driving experience for Intermountain Transportation, (2) conducting a background investigation which revealed that O'Connor had no history of traffic citations, and (3) conducting an interview.

O'Connor also successfully passed a drug and alcohol urinalysis and a medical examination. The physician who conducted the medical exam identified no medical issues affecting O'Connor such as sleep

apnea, sleep narcolepsy, or insomnia, nor any other issues related to chronic fatigue that could have affected O'Connor's driving ability. Additionally, O'Connor received periodic medical exams as part of his ongoing employment with defendant, and at no time did any physician ever identify any type of sleep disorder that would have affected O'Connor's driving. No issue related to chronic fatigue was ever identified in any additional medical exam.

During his initial training, O'Connor received 180 hours of instruction including driving Greyhound buses. He was also trained utilizing the "Smith System," which is a defensive driving program taught by almost all of the major commercial motor carriers in the United States and Canada.

Salazar states that during the training period, O'Connor had some initial problems maneuvering the bus with a left hand turn. While on Greyhound property and not on a public street, and with no passengers on the bus, O'Connor scraped a post while making a sharp left turn. O'Connor was given extra training on making left turns. After the extra training, Salazar found O'Connor to be a competent driver and allowed him to continue with his general training, which O'Connor ultimately completed successfully.

During his employment with defendant, O'Connor received no traffic citations, including no citation for the accident with plaintiff. The results of a urinalysis performed on O'Connor after the accident with plaintiff showed that O'Connor had no drugs or alcohol in his system.

On or about April 11, 2007, about two and one-half months before this accident, O'Connor had a "Miss Out." Salazar explains that Greyhound places its drivers on call (known as "Extra Boarding"), and expects the drivers to be available when summoned to come to the terminal and drive passengers when they are called by Greyhound's Dallas, Texas central processing unit. Salazar Declr. at 11. Such calls are for extra, unscheduled work shifts. A failure to answer the telephone or arrive at the terminal when called for an extra shift is referred to as a "Miss Out."

According to Salazar, on that one occasion, O'Connor was questioned by supervisor Denver Peoples for his failure to report to duty when called. *Id.* Salazar knew that Peoples had questioned O'Connor about the "Miss Out," but Salazar did not feel that this would affect O'Connor's quality of driving. *Id.*

In a write up of Peoples's interview regarding this one-time "Miss Out," there is a section for "Employee's Explanation." Here, O'Connor apparently wrote that "[a]t times I am to [sic] fatigue or have other issues that have to be taken care of." [1]

---

1. For the purposes of this motion, I assume that plaintiff could introduce an authenticated copy of this document. Notably, in opposing defendant's summary judgment motion, plaintiff has not done so. Instead, a material fact asserted by plaintiff states as follows: "O'Connor admitted that he signed on a report dated April 11, 2007 after his miss-out, that had this written in as employee's explanation: [photocopy of O'Connor's handwriting] 'At times I am to [sic] fatigue or have other issues that have to be taken care of.' From bates DEF0550 received from defendant." Pltf's Resp. to Deft's CSF at p. 3.

Plaintiff does not include the actual document in his opposition to the summary judgment motion. Rather, in support of his asserted fact, he cites to the "Third Declaration of E.J. Simmons" previously filed in support of his motion to file a second amended complaint. *See* Dkt. # 37. The cited declaration also has no copy of the actual document. Instead, there, Simmons simply states that in discovery, defendant provided an "Employee Interview Record, bates DEF0550, prepared and signed by Denver Peoples, then a supervisor, and signed by the bus driver." Simmons Third Declr. at p. 2. Simmons further states

In his own declaration, O'Connor states that when Peoples questioned him about his not being available when he was supposed to be at home and on call, he incurred "miss outs" because he did not want to work the "extra boards" defendant wanted him to work beyond his normal shifts. O'Connor Declr. at ¶ 9.

On one other occasion, O'Connor was questioned by a Greyhound supervisor about whether he had been drinking and driving while on duty. *Id.* at ¶ 8. On May 20, 2007, Regional Operations Manager Ronald Anderson wrote a report to Peoples, Kim Gann, and OSC Management, noting that he (Anderson), received a call from a passenger on "Sched 1300 in STF" stating that O'Connor was "falling asleep at the wheel, swerving all over the road and smelled of alcohol." Exh. 8 to Hernandez Declr. Anderson contacted the "STF agency" and spoke with the supervisor in charge and asked for her assessment of the driver. *Id.* He was told that the driver was alert and did not seem tired at all, and there was no smell of alcohol present. *Id.* Anderson asked the supervisor to put O'Connor on the phone. *Id.* Anderson asked O'Connor if he was feeling tired or drowsy, and O'Connor said no. *Id.* O'Connor explained that he had hit the rumble strips on the highway because of wind gusts. *Id.* Anderson again asked O'Connor if he was "OK to continue the schedule to BOI," and O'Connor reported

he felt fine and had no problems continuing. *Id.*

A few minutes later, Anderson received a call from another driver, "Operator Allen." *Id.* Allen stated that O'Connor was swerving a little, but Allen did not observe him falling asleep. *Id.* She said that a passenger told her that they observed O'Connor falling asleep and smelling of alcohol. *Id.* Allen, however, told Anderson that she did not smell any alcohol at that point. *Id.*

Anderson called back to "STF" and asked the supervisor to do another assessment of the driver before releasing him to continue. *Id.* The supervisor stated again that O'Connor was alert and did not appear to have any problems. *Id.* Anderson spoke to O'Connor again and asked again if he was tired at all and if he had consumed any alcohol within the last twelve hours. *Id.* O'Connor said he was not tired and had not had any alcohol in the last twelve hours. *Id.* Anderson conferred with his national manager and they both agreed to continue the schedule with the information from the supervisor and O'Connor. *Id.*

In his declaration, O'Connor states that when questioned, he confirmed to the Greyhound supervisor that he had not been drinking and it was his understanding that another Greyhound employee confirmed that he did not have alcohol on his

---

that "It was dated about 2 months before the injuries to plaintiff, and referred to the driver's fatigue and 'issues.' The bus driver, in his deposition, identified his signature on the form."

*Orr v. Bank of America*, 285 F.3d 764 (9th Cir.2002) suggests that plaintiff may authenticate a document used to oppose a summary judgment motion by identifying, in a declaration or affidavit, that the document was produced in discovery by the opposing party. *Id.* at 777. However, I know of no case allowing a party to create an issue of fact without

producing the actual document. Here, plaintiff relies only on a quoted excerpt of the document in question which he reproduces in the body of a memorandum, or in the assertion of a fact. Without the tender of the actual document, properly authenticated, plaintiff cannot rely on the statements in the document. Nonetheless, because I recommend that defendant's summary judgment motion be granted even when considering the statements, I assume for the purposes of this motion that plaintiff could submit the entire document and properly authenticate it.

breath. O'Connor Declr. at ¶ 8. He was allowed to continue his scheduled route and he did so without incident. *Id.* Salazar refers to the person who spoke with O'Connor (presumably Anderson, although he does not name him), as a "senior Greyhound supervisor." Salazar Declr. at ¶ 12.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

■ "If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

■ If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group,* 916 F.2d 528, 534 (9th Cir. 1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

To establish a negligent entrustment claim, plaintiff must prove that "'there was an entrustment and that the entrustment was negligent.'" *Piskorski v. Ron Tonkin Toyota, Inc.,* 179 Or.App. 713, 718–19, 41 P.3d 1088, 1091 (2002) (quoting *Mathews v. Federated Serv. Ins. Co.,* 122 Or.App. 124, 133, 857 P.2d 852, 857 (1993)). There is no dispute in this case that defendant entrusted the bus to O'Connor. The only issue is whether that entrustment was negligent.

In the absence of a special relationship between the plaintiff and the defendant, the actions by a defendant in a negligent entrustment claim are measured by a reasonable person standard. *Id.* at 719, 41 P.3d at 1091, As *Mathews* explains, when the plaintiff does not allege that there was a special relationship with the defendant, the plaintiff must show that (1) the entrustment was unreasonable under the circumstances, (2) it caused harm to the plaintiff, and (3) the risk of harm to the plaintiff (or the class of persons to whom he belongs) was reasonably foreseeable. *Mathews,* 122 Or.App. at 133–34, 857 P.2d at 857. Additionally, "an allegation that a

defendant knew about a dangerous condition must be accompanied by claimed facts showing defendant's knowledge of unreasonable risk of danger." *Mathews*, 122 Or.App. at 135, 857 P.2d at 858 (internal quotation omitted).

In his Second Amended Complaint, plaintiff alleges that defendant knew or should have known that its driver was not able to drive a bus without unreasonable risk of accident, especially late at night, "and given his fatigue and personal 'issues' around the date and time of the collision that occurred June 2[9], 200[7]." Sec. Am. Compl. at ¶ 4; *see also Id.* at ¶ 1 (alleging defendant was negligent in entrusting "the bus to the driver for a trip that would end late at night."). Plaintiff makes no allegation of a special relationship. Thus, the reasonable person standard applies.

Defendant argues that under the reasonable person standard, plaintiff cannot show that entrustment of the bus to O'Connor was negligent because defendant's actions were reasonable under the circumstances and there was no foreseeability of the risk of harm to plaintiff from the entrustment. In response, plaintiff argues that O'Connor's reference to fatigue as a basis for his April 2007 "Miss Out" created a duty on defendant to investigate a "fatigue problem" with O'Connor. Plaintiff also argues that a question of fact regarding defendant's negligence is raised by its failure to have a management-level supervisor interview plaintiff in person in response to the May 20, 2007 passenger complaint of O'Connor having alcohol on his breath.

Neither argument is availing. As to the fatigue argument, plaintiff's expert Tom Welch opines that based on his experience, his review of documents provided in discovery by defendant, and his review of deposition testimony of Salazar and O'Connor, at the time O'Connor noted fatigue as

one basis for his April 2007 "Miss Out," "there was already a pattern and management took no action to have the fatigue issue looked into and corrected." Welch Declr. at ¶ 10. He then states that defendant's failure in this regard was negligent. *Id.* He further opines that there is a duty to remove a fatigued driver from service. *Id.* at ¶ 11.

No evidence in the record reveals the cause of the June 29, 2007 accident. The only evidence regarding the accident is that it occurred on June 29, 2007, and that O'Connor turned across oncoming traffic while headed south on NW Broadway in Portland. There is no affirmative statement of the time of day, or night, that the accident occurred, although Salazar states that after the accident he was awakened by a phone call from one of the shift managers alerting him to the collision. Salazar Declr. at ¶ 13. There is no evidence regarding when O'Connor started his shift, how long he had been driving, or how much sleep he had before driving. Thus, there is no factual basis upon which a reasonable juror could conclude that driver fatigue played any role in the collision. O'Connor's fatigue or falling asleep is not alleged against either defendant.

Welch's statement about a "pattern" which should have alerted defendant to a "fatigue issue" is nothing more than speculation, not reasonably based on facts in the record. While Welch recites a few other alleged complaints about O'Connor's driving, there are no facts suggesting that fatigue was an issue in any of these events.[2] No facts show a pattern of fatigue-related incidents and no facts demonstrate a fatigue problem. The only fact is a single incident, two and one-half months before the accident at issue in this case, in which O'Connor recited fatigue as one reason why he did not respond to a call for

---

2. There are also no documents submitted evidencing any of these alleged complaints.

*extra* shifts. This creates no issue regarding O'Connor ever having driven while fatigued. In fact, it most reasonably suggests just the opposite: he did not want to drive an extra shift because he was concerned about fatigue. No reasonable juror could conclude, based only on the April 11, 2007 reference to fatigue as one cause for a "Miss Out," that defendant had a duty to investigate further whether O'Connor drove regular shifts while fatigued. Thus, Welch's opinion that defendant was negligent in not investigating an alleged fatigue problem does not create an issue of fact precluding summary judgment because the facts in the record simply do not support it.

In *Achey v. Crete Carrier Corp.*, No. 07–cv–3592, 2009 U.S. Dist. LEXIS 44353, at *18 (E.D.Penn. Mar. 30, 2009), the court considered a summary judgment motion regarding whether the evidence supported a punitive damages award in a negligent entrustment case as a matter of law. While the context of the court's analysis is distinguishable because it considered the standard required to establish punitive damages as opposed to the underlying liability, the court's analysis of the proffered expert's testimony is relevant.

The issue concerned the notice to the defendant of a fatigue problem caused by the driver's documented sleep apnea. The court noted that the driver had been involved in several accidents. *Id.* at *17. But, the court explained, all of the incidents appeared to be minor and involve negligent driving while the driver was fully alert. *Id.* Thus, the court concluded, the incidents could not provide the defendant with sufficient notice that the driver had a predisposition to falling asleep at the wheel. No other incident involved driver fatigue.

The court dismissed the plaintiff's expert's testimony linking a prior citation for weaving to a problem of driver alertness, as speculation. *Id.* at *19. There was no other evidence linking any prior citations to fatigue. *Id.*

I agree with defendant that as in *Achey*, plaintiff here fails to create an issue of fact regarding medical and/or fatigue issues through Welch's opinions and conclusions which amount to nothing more than speculation. In summary, as to the fatigue issue, plaintiff does not allege in his Second Amended Complaint that fatigue played a role in causing the accident. Plaintiff fails to submit any evidence in the summary judgment record that fatigue was a cause of the accident. Plaintiff fails to create an issue of fact regarding the cause of the accident being fatigue. Plaintiff further fails to create an issue of fact that defendant had any duty to investigate an alleged fatigue problem based on O'Connor's single reference, two and one-half months before the accident, in a different context, to being too fatigued to take on extra shifts. Thus, plaintiff fails to create an issue of fact in opposition to the negligent entrustment claim based on the issue of fatigue.

As to any alcohol-related evidence, the record shows only the single unsubstantiated passenger complaint in May 2007. Plaintiff does not allege in his Second Amended Complaint that alcohol was a cause of the June 29, 2007 accident. No evidence in the summary judgment record suggests that alcohol was a factor in the accident. In fact, as noted above, the urinalysis performed on O'Connor after the accident detected no drugs or alcohol in his system. No evidence suggests that O'Connor had any kind of ongoing alcohol problem. Plaintiff fails to create an issue of fact regarding alcohol being a cause of the accident.

Additionally, Welch's opinion that defendant's failure to have a management-level employee personally interview O'Connor

after defendant received the passenger complaint in May 2007, does not create an issue of fact precluding summary judgment on the negligent entrustment claim. First, Welch cites no authority establishing an "in person" interview as a requirement or industry standard. Second, even assuming such a protocol applied, with no evidence that alcohol was a factor in the accident, Welch's opinion about the negligence of defendant's investigation practices is not relevant to the negligent entrustment claim. As noted above, there must be facts showing that defendant knew of a dangerous condition which created an unreasonable risk of harm should defendant entrust the driver with the bus. Plaintiff must show a question of fact with respect to this risk of harm actually causing the accident which allegedly injured plaintiff. As stated above, plaintiff fails to do so. No facts in this record demonstrate that the entrustment in this case was unreasonable as a result of defendant failing to conduct an in-person interview following a passenger complaint of suspected alcohol use, when defendant did investigate the complaint through other means, and when alcohol was not a factor in the accident. No reasonable juror could conclude that any risk of harm to plaintiff was reasonably foreseeable.

## CONCLUSION

I recommend that defendant's motion for summary judgment (# 43) be granted. I deny defendant's motion to strike (# 62) as moot.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 15, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due December 29, 2009. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.